**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

ADRIANA S. SEPULVEDA,

                    **Plaintiff,**

          v.                                            **Civil Action No.: 4:05cv167**

LEROY STIFF, M.D.,
MICHAEL PARSON, M.D.,
ODELL M. McCANTS, M.D.,
PENINSULA INSTITUTE FOR
COMMUNITY HEALTH, INC.,
EMERGENCY CONSULTANTS, INC.,
and RIVERSIDE HOSPITAL d/b/a RIVERSIDE
REGIONAL MEDICAL CENTER,

                    **Defendants.**

**OPINION & ORDER**

          In the above medical malpractice matter, two dispositive Motions are pending before the

Court.  Riverside Hospital ("Riverside" or "the Hospital") has filed a second Motion on the

Pleadings (Docs. 46, 47), alleging that Plaintiff, Adriana Sepulveda ("Plaintiff"), has not filed a

legally sufficient More Definite Statement (Doc. 45) per this Court's Order of September 5,

2006, and that Plaintiff's Amended Complaint against Riverside should therefore be dismissed.

Further, Defendants Emergency Consultants, Inc. ("ECI") filed a Motion for Summary Judgment

(Docs. 28, 29), which is before this Court following the extension of time for discovery included

in the September 5th Order.  Doc. 64.  Finally, ECI has filed a Motion to Strike (Doc. 69)

Plaintiff's Supplemental Brief (Doc. 67), because it was filed on September 15, 2006, one day

after the filing deadline.

          For the reasons stated herein, the Court **DENIES** Riverside's Motion on the Pleadings as

to Plaintiff's claim that the Hospital is vicariously liable for the allegedly negligent acts of its employees; however, the Court **GRANTS** Riverside's Motion insofar as the Court finds that Plaintiff has not alleged a claim for vicarious liability under any other theory, nor has it sufficiently alleged its claim for independent liability.  The Court further **DENIES** ECI's Motion for Summary Judgment, because there is a genuine issue of material fact as to the relationship between ECI and REP, upon which liability might be grounded.  Finally, because Defendant ECI's Motion to Strike was not raised at oral argument, the Court considers it **WAIVED**.

## I. PROCEDURAL HISTORY

On December 14, 2005, Plaintiff filed a Complaint against Leroy Stiff, M.D., Michael Parson, M.D., Odell M. McCants, M.D. ("Individual Physicians"), and Peninsula Institute for Community Health, Inc. ("Peninsula").  Doc. 1.  With leave of Court, Plaintiff filed an Amended Complaint on February 7, 2006, adding Riverside and ECI as Defendants.  Doc. 4.  In Plaintiff's Amended Complaint, Plaintiff alleges medical malpractice, in violation of Va. Code Ann. § 8.01-581.1.  Doc. 1 ¶¶ 9-12.  Plaintiff prays for relief in the amount of $3,000,000 in compensatory damages and $500,000 in punitive damages.  Id. ¶ 13.

On February 24, 2006, ECI filed a Motion to Strike the Ad Damnum from the Amended Complaint, pursuant to Local Rule 7(E)(1) and Rule 12(f) of the Federal Rules of Civil Procedure.  Doc. 5.  On March 22, 2006, Riverside filed a Motion to Strike Ad Damnum from the Amended Complaint, a Motion to Strike Memorandum in Opposition to [ECI's] Motion for Failure to Meet Form Requirements, and a Motion for Judgment on the Pleadings.  Docs. 13-15. On May 19, 2006, the Government was substituted as the Defendant for the Individual Physicians and Peninsula.  Doc. 27.  Plaintiff made no objection to the Government's substitution.  On May 24, 2006, ECI filed a Motion for Summary Judgment, and a Memorandum in Support.  Docs. 28, 29.  On May 30, 2006, the Government filed a Motion to Dismiss, and a

Memorandum in Support.  Docs. 30, 31.  On June 23, 2006, Riverside filed a Motion In Limine and to Enjoin Plaintiff's Counsel for Directly Contacting Riverside Hospital.  Doc. 36.

This Court conducted a hearing on July 25, 2006 to evaluate the above Motions.  Doc. 44.  The Court issued its Opinion on September 5, 2006.  Doc. 64.  The Court: (1) denied ECI and Riverside's Motion to Strike the Ad Damnum; (2) denied Riverside's Motion for Judgment on the Pleadings; (3) ordered Plaintiff to file a More Definite Statement by August 9, 2006; (4) took ECI's Motion for Summary Judgment under advisement; (5) struck Plaintiff's counsel's affidavit from the record; (6) granted the parties until September 1, 2006 to conduct all discovery as they deemed appropriate, relevant to the Motion on Summary Judgment; (7) ordered Plaintiff to submit a separate response to ECI's Motion for Summary Judgment by September 12, 2006; (8) granted the Government's Motion to Dismiss, without prejudice to Plaintiff filing suit against the Government after final disposition of her administrative claim; (9) granted Riverside's Motion In Limine; and, (10) ordered Plaintiff's counsel not to contact any employee or entity of any Defendant in this action unless Plaintiff's counsel first obtains the consent of the counsel for the employee or entity prior to such contact, or with leave of Court.  Id.

In the interim before the Court issued its Opinion, Plaintiff filed her More Definite Statement on August 1, 2006, seeking to clarify allegations made in the Amended Complaint.  Doc. 45.  On August 4, 2006, Riverside filed a second Motion on the Pleadings and Memorandum in Support.  Docs. 47, 48.  Plaintiff filed her Motion in Opposition to the Motion on the Pleadings on August 17, 2006.  Doc. 51.  Riverside filed its Reply on August 23, 2006.  Doc. 55.

Plaintiff requested of ECI's counsel an extension of time—two days—for which to file her Supplemental Brief in Opposition to Summary Judgment, due to delays in discovery caused by the tropical storm that hit the Norfolk area just prior to Labor Day weekend.  Doc. 67 at 1.

ECI's counsel agreed to the two day extension, requiring that Plaintiff file her brief on

September 14, 2006, on condition that ECI be given a similar extension of time in which to

submit its rebuttal brief.  Doc. 69 at 2.  This agreement was memorialized in a Consent Order

entered on September 13, 2006 (Doc. 66).  On September 15, 2006, Plaintiff filed a

Supplemental Brief in Opposition to ECI's Motion for Summary Judgment.  Doc. 67.   This is

one day later than the agreed-upon deadline.  ECI's Rebuttal Brief was filed on September 27,

2006.  Doc. 69.  In its Rebuttal, ECI moved the Court to strike the Supplemental Brief as

untimely and to enter summary judgment in favor of ECI.  Doc. 69 at 2.

## II. FACTUAL BACKGROUND

Plaintiff received medical treatment by various healthcare providers in the Tidewater area

between July 2003 and February 2004, and her cause of action arises out of an allegedly

negligent failure of these healthcare providers to "timely diagnose/treat a molar pregnancy . . . ,

and/or to refer to a specialist for proper and timely treatment, which negligence led to the

development of gestational trophoblastic disease, which became metastatic choriocarcinoma."

Doc. 4 ¶ 6.  The Amended Complaint further alleges that

> the foregoing lack of work up, referral and/or timely diagnosis
> occurred in the face of a history of molar pregnancies, and
> notwithstanding Defendant's charted knowledge that Plaintiff has had
> a miscarriage in July 2003, a bilateral tubal ligation and nevertheless
> reported rising Beta hCG levels as well as an US of January 8, 2004
> which was read as "strongly suggestive of molar pregnancy (a) there
> is no evidence of a normal appearing intrauterine gestation (so)
> correlation with Beta HcG [sic] levels will be needed to confirm . . ."
> and which finding were called to Dr. McCant[s], who advised the
> hospital to discharge the Plaintiff.

Id. ¶ 7.  Finally, Plaintiff alleges that the molar pregnancy diagnosis was made in February 2004,

"but not before the molar pregnancy [had] become metastatic choriocarcinoma, which required

multiple surgeries, therapies, permanent cognitive impairment and sequela such as the onset of

-4-

strokes from the scarring left by the lesions which were allowed to form, untreated over many

months." Id. ¶ 8.

Plaintiff alleges that these acts and omissions violate the standard of care required of

health care providers under 42 C.F.R. (Code of Federal Regulations) § 482.12 et seq.[1] and §

8.01-581.20 of the Code of Virginia.[2] Id. ¶ 4; Doc. 45 ¶ 1.

### III. RIVERSIDE'S MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiff alleges that Riverside is responsible for injury caused to her as a result of

---

[1]This section provides the conditions and standards required for hospitals participating in the Medicaid and Medicare programs.  Specifically, Plaintiff relies on section (e)(1), which states that "[t]he governing body [the hospital] must ensure that the services performed under a contract are provided in a safe and effective manner."  42 C.F.R. § 482.12(e)(1); Doc. 45 ¶ 1.

[2]This section governs the standard of care applicable in medical malpractice cases.  The relevant portion of this statute provides:

> In any proceeding before a medical malpractice review panel or in any action against a physician, clinical psychologist, podiatrist, dentist, nurse, hospital or other health care provider to recover damages alleged to have been caused by medical malpractice where the acts or omissions so complained of are alleged to have occurred in this Commonwealth, the standard of care by which the acts or omissions are to be judged shall be that degree of skill and diligence practiced by a reasonably prudent practitioner in the field of practice or specialty in this Commonwealth and the testimony of an expert witness, otherwise qualified, as to such standard of care, shall be admitted; provided, however, that the standard of care in the locality or in similar localities in which the alleged act or omission occurred shall be applied if any party shall prove by a preponderance of the evidence that the health care services and health care facilities available in the locality and the customary practices in such locality or similar localities give rise to a standard of care which is more appropriate than a statewide standard.

Va. Code § 8.01-581.20(A) (emphasis added).  Plaintiff asserts that "other health care provider" includes hospitals and anyone else practicing medicine in the State of Virginia.  Doc. 4 ¶ 4.

negligent treatment she received while undergoing treatment at the Hospital.  Plaintiff's claims

against Riverside are grounded in two theories: (1) that Riverside was "vicariously negligent for

the independent contracting doctors in its emergency room, because it has a non-delegable duty

under the C.F.R. [Code of Federal Regulations § 482.12 et seq.] to provide contracted services

which are safe and competent"; and, (2) that Riverside is independently negligent for "failing to

communicate abnormal laboratory findings to Plaintiff's outpatient physicians and/or to timely

diagnose/treat the cancer and/or refer her for treatment."  Doc. 51; see Doc. 4 ¶¶ 6-8; Doc. 45 ¶¶

1, 3-5.

### A. Standard of Review

*1. Motion on the Pleadings*

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed but

within such time as not to delay the trial, any party may move for judgment on the pleadings."  FED.

R. CIV. P. 12(c).

> The pleadings are considered closed "upon the filing of a complaint
> and answer." 5A C. Wright & A. Miller, Federal Practice &
> Procedure § 1367 (West 1990) (citing Fed. R. Civ. P. 7(a)) (footnotes
> omitted).  As previously explained by this Court, "[a] Rule 12(c)
> motion . . . is appropriate when all material allegations of fact are
> admitted in the pleadings and only questions of law remain."
> Republic Ins. Co. v. Culbertson, 717 F. Supp. 415, 418 (E.D. Va.
> 1989) (Cacheris, J.)[.]

Va. Imps., Inc. v. Kirin Brewery of Am., LLC, 296 F. Supp. 2d 691, 695 (E.D. Va. 2003).

In accordance with the notice pleading standards of Federal Rule of Civil Procedure 8(a),

Plaintiff's Amended Complaint must contain a short and plain statement of Plaintiff's claims so

as to give the defendants named therein fair notice of what Plaintiff's claims are and the grounds

upon which they rest.  See Edwards v. City of Goldsboro, 178 F.3d 231, 245 (4th Cir. 1999)

(citing Fed. R. Civ. Proc. 8(a)).  This is not a burdensome standard, and the court will dismiss a

claim on the pleadings "only if it is clear that no relief could be granted under any set of facts

that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); see Conley v. Gibson, 355 U.S. 41, 48 (1957) ("The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.").

### 2. More Particular Statement

Federal Rule of Civil Procedure 12(e) provides:

> If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before imposing a more responsive pleading. The motion shall point out the defects complained of and the details desired. If the motion is granted and the order of the court is not obeyed within 10 days after notice of the order or within such time as the court may fix, the court may strike the pleading to which the motion was directed or make such order as it deems just.

Fed. R. Civ. P. 12(e). The purpose of a more definite statement is "to require a pleader to state with definiteness what he first stated vaguely, even if simply and concisely." Walling v. West Virginia Pulp & Paper Co., 2 F.R.D. 416, 419 (D.D.C. 1942). Requiring a more definite statement is generally disfavored and should only be ordered when the complaint is so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it. Greater New York Auto. Dealers Ass'n v. Environmental Systems Testing, Inc., 211 F.R.D. 71, 76 (E.D.N.Y. 2002).

The standard for determining whether a more definite statement is sufficient is tied to that for sufficiency of a complaint under Rule 8(a)(2). Schaedler v. Reading Eagle Publication, Inc., 370 F.2d 795 (3rd Cir. 1967). A complaint is sufficient where it states jurisdictional grounds for the claim, identifies sections of the law allegedly violated, describes the nature of the violations, and specifies the time period in which the alleged violations occurred. Hodgson v. Virginia

Baptist Hospital, Inc., 482 F.2d 821, 823-24 (1973).  Therefore, where a more definite statement fails to allege additional facts and law giving notice to the defendant of the claims filed against it, the more definite statement is insufficient and the Court may take appropriate action under the terms of Rule 12(e).

### 3. Medical Malpractice

As a federal court exercising diversity jurisdiction, this Court interprets and applies the substantive law of the state in which the action arose.  Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).  Because this matter arose in the Commonwealth of Virginia, this Court must apply the medical malpractice laws of Virginia.  See Castillo v. Emergency Medicine Associates, P.A., 372 F.3d 643, 649 (4th Cir. 2004); Docs. 1, 4, 45.

In order to appropriately plead a medical malpractice case, the plaintiff must allege an actionable claim of negligence against the defendant, as well as demonstrate that facts exist to support the elements of negligence which are attributable to the defendant.  To establish a prima facie case of medical malpractice, the plaintiff must establish: "(1) the applicable standard of care, (2) that the standard has been violated, and (3) that there is a causal relationship between the violation and the alleged harm.  See Fitzgerald v. Manning, 679 F.2d 341, 346 (4th Cir. 1982)."  Blevins v. Sheshadri, 313 F. Supp. 2d 598, 601 (E.D. Va. 2004); Bryan v. Burt, 254 Va. 28, 34 (1997).

Plaintiff attributes negligence to Riverside under theories of vicarious and independent liability.  It is well-settled in Virginia, that "the doctrine of respondeat superior imposes tort liability on an employer for the negligent acts of its employees, i.e., its servants, but not for the negligent acts of an independent contractor."  Sanchez v. Medicorp Health Sys., 270 Va. 299, 304-305 (2005) (citing McDonald v. Hampton Training Sch. for Nurses, 254 Va. 79, 81 (1997); Norfolk & W. Ry. Co. v. Johnson, 207 Va. 980, 983 (1967); Smith v. Grenadier, 203 Va. 740,

747 (1962); <u>Griffith v. Electrolux Corp.</u>, 176 Va. 378, 387 (1940); Restatement (Second) of Torts § 409).  Further, the Virginia Supreme Court has found that a hospital is not liable, under the doctrine of apparent or ostensible agency, for the alleged negligence of an emergency room physician who was an independent contractor.  <u>Sanchez</u>, 270 Va. at 305-07.

### B. Plaintiff's Pleadings

*1. Plaintiff's Amended Complaint*

In the Amended Complaint, Plaintiff alleges that she was a patient at Riverside and that "[a]t all times material to this proceeding, each Group, practice, hospital or other entity was and is a health care provider within the meaning of § 8.01-581.1 of the Code of Virginia, licensed by the State of Virginia, and at all times material to this proceeding said Defendant rendered healthcare to Plaintiff by acting through the named Defendant, and/or its own agents, actual, apparent or implied and/or employees, all of whom were acting within the scope of their authority."  Doc. 4 ¶ 5.

In paragraphs six (6), seven (7), and ten (10) of her Amended Complaint, Plaintiff further alleges that

> 6.     [T]he Defendants, jointly and severally owed Plaintiff a duty to exercise the proper degree of care and were negligent in their treatment of Plaintiff and did otherwise breach the standard of care existing in this Commonwealth and as a direct and proximate result of Defendants' aforesaid breaches, Plaintiff was injured when they jointly and severally failed to timely diagnose/treat a molar pregnancy in 2003/3004, and/or to refer to a specialist for proper and timely treatment, which negligence led to the development of gestational trophoblastic disease, which became metastatic choriocarcinoma.
>
> 7.     That foregoing lack of work up, referral and/or timely diagnosis occurred in the face of a history of molar pregnancies, and notwithstanding Defendant's charged knowledge that Plaintiff had had a miscarriage in July 2003, a bilateral tubal ligation and nevertheless reported rising Beta hCG levels as well as an US of January 8, 2004 which was read as "strongly suggestive of molar

pregnancy (as) there is not evidence of a normal appearing intrauterine gestation (so) correlation with Beta HcG [sic] levels will be needed to confirm . . ." and which findings were called to Dr. McCant[s], who advised [Riverside] to discharge the Plaintiff.
. . .

10.    During the time Plaintiff was under the care and treatment of these Defendants, they individually and jointly breached the standard of care, then existing in the Commonwealth, as aforesaid, and in the process committed gross negligence, which proximately caused metastatic choriocarcinoma[,] which disease required, among other treatment, a craniotomy and led to multiple and permanent medical complication and bills from the treatment, all of which was otherwise entirely unnecessary.

Doc. 4 ¶¶ 6, 7, and 10.

### 2. More Definite Statement

In its September 5th Order, this Court ordered Plaintiff to file a More Definite Statement "in view of the relative obscurity of Plaintiff's theories of recovery contained in the Amended Complaint."  Doc. 64 at 10.

The most pertinent portions of Plaintiff's More Definite Statement include:

1.    The Hospital has a contractually non-delegable duty, under 42 CFR § 482.12 *et seq.*, which establishes those conditions of compliance for each Hospital participating in the Medicaid and Medicaid programs and provides, *inter alia*, that the Hospital must ". . . ensure that the services performed under a contract are provided in safe and effective manner. . . ."

3.    The Hospital failed to comply with the aforesaid federal regulations and specifically did fail to staff, manage, and provide competent medical care in its emergency care setting to the Plaintiff for those reasons more particularly set forth in Plaintiff's Amended Complaint, which allegations are incorporated *in extenso*. . . .

4.    Further, the Hospital did fail in its contractual and discreet, independent duty to store, maintain, communicate and advise the Plaintiff's non-hospital based physicians about the emergency room care, lab results, treatment and her out-patient medical needs, as defined by the above mentioned federal regulations [42 C.F.R. § 482.12 *et seq.*], and under the Commonwealth's standard of care ["that degree of skill and diligence practiced by a reasonably prudent

practitioner in the field of practice or specialty in this Commonwealth" as articulated in Va. Code § 8.01-581.20].

5.   The duties of the Hospital, as set forth in the federal regulations and in the statutory and common law of this state, were breached in that, without limitation, it did fail to routinely, and/or timely, communicate with, notify and/or forward to the Plaintiff's non-hospital based physicians the records reflecting emergency room based treatment, lab results, findings and/or to then diagnose or treat her condition prior to outpatient discharge, which was, therefore, untimely, unwarranted and in breach of its obligations, because such discharge occurred absent timely and appropriate discharge instructions for follow up care and/or for referral to another physician for such timely care, and diagnosis, which left Plaintiff discharged in an unstable, life threatening condition, in violation of both state and federal law.

6.   As a direct result of the foregoing, the Hospital is legally responsible for the negligent acts or omissions of any independent contractor who may have been negligent in providing care ot [sic] the patient, either by act or omission. . . .

Doc. 45 ¶¶ 1, 3-6.

## C. Discussion

### 1. Negligence Per Se

In its second Motion on the Pleadings, Riverside alleges that it is entitled to have the claims against it dismissed, because Plaintiff's More Definite Statement and Amended Complaint "should be stricken as she fails to provide details supporting her original allegations and instead attempts to plead two entirely new causes of action."  Doc. 48 at 3.  Riverside construes these two new causes of action to be two claims for negligence per se, derived from Plaintiff's allegations that Riverside owed Plaintiff a non-delegable duty under the C.F.R. and that Riverside failed to properly communicate and advise non-hospital physicians.[3]  Id.

_____

[3]"To prove a claim of negligence per se, the Plaintiff must establish that the Defendants violated a statute that was enacted for public safety, that the Plaintiff belongs to the class of

In response, Plaintiff asserts that these "two new arguments" in its More Definite Statement are in fact the supporting facts and law required by this Court's September 5th Order, to clarify the Amended Complaint. Doc. 51 at 1. Plaintiff claims that it alleged two grounds in support of its negligence claim—vicarious and independent liability—in the Amended Complaint. Doc. 4 ¶¶ 5, 6, 7, 10; Doc. 51 at 1. The Court agrees and finds that the Amended Complaint expounds upon the two theories initially posed in the Amended Complaint.[4]

Because the allegations elaborated in Plaintiff's More Definite Statement are within the ambit of the original negligence claims alleged by Plaintiff in the Amended Complaint, the Court **DENIES** Riverside's second Motion on the Pleadings insofar as it alleges that Plaintiff has asserted two <u>new</u> claims. Plaintiff has sufficiently plead the elements of negligence by stating a statutory standard of care which she alleges Riverside breached, causing her injury. However, Riverside's argument that Plaintiff is attempting to assert a claim for negligence <u>per se</u> by relying on the C.F.R. is relevant to a determination of whether the C.F.R. creates a private right

---

persons for whose benefit the statute was enacted, that the harm that occurred was of the type against which the statute was designed to protect, and that the statutory violation was a proximate cause of Plaintiff's injury." <u>O'Neil v. Windshire Copeland Associates, L.P.</u>, 197 F. Supp. 2d 507, 509 (E.D.Va. 2002) (citing <u>Halterman v. Radisson Hotel Corp.</u>, 259 Va. 171, 176-77 (2000).

[4]Paragraphs one (1), three (3), and six (6) of the More Definite Statement, regarding the Hospital's non-delegable duty to comport with the standard of care articulated in § 482.12 <u>et seq.</u> of the C.F.R., relate to the allegations of vicarious liability included in paragraph six (6), which allege a violation of the standard of care proscribed in by Riverside "and/or its own agents, actual, apparent or implied and/or employees, all of whom were acting within the scope of their authority." See Doc. 4 ¶ 6; Doc. 45 ¶¶ 1, 3, 6.

Further, support for Plaintiff's claims for independent liability may be found in paragraphs five (5) and ten (10) of the Amended Complaint. Doc. 64 at 10. Upon comparing the More Definite Statement to the Amended Complaint, paragraphs four (4) and five (5) of the More Definite Statement elaborate on Plaintiff's allegations of independent negligence by asserting a theory based in Riverside's failure to communicate and advise the non-hospital doctors treating Plaintiff in violation of the standard of care. Doc. 54 ¶¶ 4, 5.

of action for Plaintiff's negligence claims.

## 2. *Vicarious Liability*

### a. Non-Delegable Duty Under the C.F.R.

Plaintiff argues that "Riverside has a federally imposed non-delegable duty to provide competent care, whether contractually or directly, which conforms to the standard of care existing in this Commonwealth in the years 2003 and 2004, when Mrs. Sepulveda was treated at Riverside." Doc. 51 at 4. Such a non-delegable duty, it is argued, arises because Riverside received medical assistance payments (Medicaid).[5] See 42 C.F.R. § 482.1(a)(5). Plaintiff ostensibly asserts this argument in an effort to circumvent the long-established rule in Virginia that vicarious liability cannot be attributed to independent contractors, except in special circumstances. Sanchez, 270 Va. 299 at 304 (citing numerous authorities in support of this proposition).

In determining whether to imply a private right of action when Congress has not made one explicitly, "[t]he key to the inquiry is the intent of the Legislature." Middlesex Cty. Sewerage Auth. v. Sea Clammers, 453 U.S. 1, 13 (1981) (citations omitted). Unless such "congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist." Thompson v. Thompson, 484 U.S. 174, 179 (1988).

---

[5]Plaintiff relies on section (e)(1), which states that "[t]he governing body [the hospital] must ensure that the services performed under a contract are provided in a safe and effective manner." 42 C.F.R. § 482.12(e)(1); Doc. 45 ¶ 1. Plaintiff further cites section (e)(2), which reads: "The hospital must maintain a list of all contracted services, including the scope and nature of the services provided." 42 C.F.R. § 482.12(e)(2); Doc. 51 at 5. Finally, Plaintiff asserts that section (f)(1) lends support for her claim: "If emergency services are provided at the hospital, the hospital must comply with the requirements of § 482.55." 42 C.F.R. § 482.12(f)(1); Doc. 51 at 5.

-13-

Section 482.1, <u>et</u> <u>seq.</u> of Title 42 of the Code of Federal Regulations was promulgated pursuant to §§ 1102 and 1871 of the Social Security Act, 42 U.S.C. §§ 1302 and 1395.  <u>See</u> 42 C.F.R. 482, Conditions for Participation for Hospitals.  Nowhere in the relevant provisions of the C.F.R., or in the statute authorizing it, is a private right of action expressly created.  In so finding, the Court finds it important, in determining the import of this provision, to look to the lead section defining the basis, scope, and purpose of the regulation.  First, the Court notes that the provision relied upon by Plaintiff is entitled "Conditions for Participation for Hospitals" in the Medicaid and Medicare programs, the implied failure of any condition being the possible removal from participation.  <u>See</u> <u>id.</u>  Section 482.1(a)(i), in delineating the basis of the regulations, further states that "Hospitals participating in Medicare must meet certain specified requirements."  42 C.F.R. § 482.1(a)(i).  Finally, the section defining the scope of the provision prescribes that "the provisions of this part serve as the basis of survey activities <u>for the purpose of determining whether a hospital qualifies</u> for a provided agreement under Medicare and Medicaid."  42 C.F.R. § 482.1(b).

It is clear to this Court that the provision upon which Plaintiff relies does not create a private right of action, whether express or implied.  Sections 482.1 <u>et</u> <u>seq.</u> are merely intended to set out the guidelines for determining whether a hospital may participate in Medicaid or Medicare; indeed, that is its stated purpose.  <u>See</u> <u>id.</u>  The Court, therefore, finds no support for Plaintiff's claim Congress intended to create a new private right of action, exposing hospitals to liability for medical malpractice, in §§ 1302 and 1395 of the Social Security Act, or the implementing regulations contained in 42 C.F.R. §§ 482.1, <u>et</u> <u>seq.</u>

 Because the Court finds that the C.F.R. is not applicable, Plaintiff's claim that a non-delegable duty exists between the hospital and patients pursuant to the C.F.R. must necessarily

fail as well.  Plaintiff can show no support, other than the C.F.R. and ill-fitting analogies drawn from landlord-tenant law, in support for her argument.  The Court thus finds Plaintiff's claims under the C.F.R. unpersuasive, and **GRANTS** Riverside's Motion for Judgment on the Pleadings as to the creation of a cause of action or the creation of a federal standard of care based upon the cited C.F.R. provisions.

### b. Independent Contractors

"In Virginia, the doctrine of respondeat superior imposes tort liability on an employer for the negligent acts of its employees, i.e., its servants, but not for the negligent acts of an independent contractor."  Sanchez, 270 Va. at 304.  Where Plaintiff alleges that Riverside is liable for the negligence of independent contractors, such as those contracted-for doctors working in the emergency room or any other of the Hospital's departments, the Court finds that these claims are insufficient.  Accordingly, the Court **GRANTS** Riverside's Motion for Judgment on the Pleadings as it applies to Plaintiff's claims that Riverside is liable for the alleged negligence of independent contractors.

### c. Hospital Employees

The Court, however, **DENIES** Riverside's Motion as it applies to Plaintiff's claims for vicarious liability under § 8.01-581.20, for the allegedly negligent actions taken by Riverside's employees.   Plaintiff has sufficiently alleged facts and law in support of her claims for negligence as they apply to hospital employees.  See Docs. 4, 45.  "In Virginia, the doctrine of respondeat superior imposes tort liability on an employer for the negligent acts of its employees . . . ."  Sanchez, 270 Va. at 304.  Therefore, Plaintiff's allegations are sufficient, insofar as she alleges negligence attributable to Riverside's employees in her Amended Complaint and More Definite Statement.

-15-

*3. Plaintiff's Claim that Riverside is Independently Liability for Negligence*

Plaintiff alleges that Riverside is independently liable for Plaintiff's injury, because it breached the duty owed her by "failing to communicate abnormal laboratory findings to Plaintiff's outpatient physicians and/or to timely diagnose/treat the cancer and/or to refer her for treatment." Doc. 51 at 1. Essentially, Plaintiff alleges a failure to communicate. There is no non-delegable duty upon a hospital to communicate information to a treating physician. As with any claim for ordinary negligence, the test is whether this failure to communicate was undertaken by an employee, for whom the Hospital may be liable, or by an independent contractor, for whom the Hospital is not liable. As previously mentioned, Plaintiff may allege negligence against the Hospital for the acts of its employees if they were responsible for the alleged failure to communicate. However, the Court finds that a cause of action may not be created for the alleged negligence of independent contractors by classifying it as independent liability. Accordingly, the Court **GRANTS** Riverside's Motion for Judgment on the Pleadings as it regards independent liability for the alleged failure to communicate by independent contractors.

IV. ECI's Motion for Summary Judgment

Plaintiff claims that liability should be imputed to ECI for its alleged role in staffing and managing Riverside's emergency department. Doc. 4 ¶ 5; Doc. 32. Defendant ECI filed the instant Motion for Summary Judgment to dismiss itself from the case, alleging that it does not practice medicine and does not manage the practice of medicine in any way. Doc. 29. The Court took ECI's Motion under advisement, pending further discovery. Doc. 64. This matter is now ripe for the Court's decision, following completion of discovery on this issue, the submission of additional briefs, and oral argument. See Docs. 67, 69.

### A. Standard of Review

Summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); see also Miller v. Leathers, 913 F.2d 1085, 1087 (4th Cir. 1990). Summary judgment is appropriate when the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-49 (1986). The facts and inferences drawn from the pleadings must be viewed in the light most favorable to the nonmoving party. Nguyen v. CNA Corp., 44 F.3d 234, 237 (4th Cir. 1995). If the parties dispute the facts of the case, "plaintiff's version of the facts must be presented where the parties' versions conflict, at least to the degree that [her] allegations have support in affidavits, depositions or other documentary evidence." Magnuson v. Peak Technical Servs., 808 F. Supp. 500, 504 (E.D. Va. 1992) (citations omitted).

In order to successfully defeat a motion for summary judgment, a nonmoving party cannot rely on "mere belief or conjecture, or the allegations and denials contained in the pleadings." Doyle v. Sentry Ins., 877 F. Supp. 1002, 1005 (E.D. Va. 1995) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). Rather, the nonmoving party must set forth specific facts through affidavits, depositions, interrogatories, or other evidence to show genuine issues for trial. Celotex, 477 U.S. at 324. When the nonmoving party fails to make a sufficient showing establishing an essential element of his case and he bears the burden of proof on that issue, "there is 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 322; Anderson, 477 U.S. at 254.

### B. Discussion

-17-

Plaintiff alleges that summary judgment in favor of ECI is inappropriate, because REP, which has a contract with Riverside to provide "physician staffing, management and consulting services," is merely a subdivision of the controlling entity, ECI; therefore, ECI is responsible for the negligence of REP's physicians.  Doc. 67 at 2-3; Doc. 32, Ex. 2 (Agreement for Emergency Department Management Services). Plaintiff bases her argument on the affidavit of James M. Johnson, President of REP and President and CEO of ECI, and on the contracts executed between ECI and REP, and between REP and the Hospital.

### 1. The Role of James M. Johnson

In support of its Motion for Summary Judgment, ECI submitted the affidavit of James M. Johnson ("Mr. Johnson"), the President and CEO of ECI, to explain ECI's relationship, if any, to the instant action.  See Doc. 29, Ex. 1 (Affidavit of Mr. Johnson).  In the affidavit, Mr. Johnson averred that ECI is a nationwide entity that provides various administrative services to its clients, such as marketing, scheduling, payroll, and accounting, as well as some recruiting and human resources services.  Id. ¶ 5-6.  Mr. Johnson further averred that ECI does not currently have, nor has ever had, any contractual relationship with any of the parties defendant to the instant action to provide any medical care to patients of those parties defendant, and that "[n]one of ECI's employees, agents, or independent contractors rendered medical care or treatment to [Plaintiff] at any time." Id. ¶ 4.  Mr. Johnson stated that "ECI did not control the selection or engagement of, nor did it possess the ultimate decision-making authority on the hiring or firing of any physician or healthcare provider who may have treated [Plaintiff]"; that "no physician or healthcare provider who may have treated [Plaintiff] was paid out of ECI revenues"; and that "ECI did not control the means or method of the work of any physician or healthcare provider who may have treated [Plaintiff] . . .  [or] the professional medical judgment of, nor did it ever direct the details of the work of any physician or healthcare provider who may have treated [Plaintiff]."  Doc. 29,

Ex. 1 ¶ 7-8.

Plaintiff asserts, however, that Mr. Johnson "created ECI as a corporate hub, and then formed affiliated professional corporations to service the emergency rooms which he manages." Doc. 67 at 4 (citing the Johnson Aff. at 5).  In support of this assertion, Plaintiff claims that: (1) Mr. Johnson has created forty (40) affiliated LLPs, which operate in twelve (12) different states; (2) that Mr. Johnson is the sole Managing Partner of each partnership; and, (3) that he owns 99% of each partnership.  Id.  Plaintiff further alleges that REP and ECI maintain their business offices at the same Michigan address.  Id. at 5.  Finally, Plaintiff alleges that Mr. Johnson is the manager of Riverside's emergency department, by virtue of the fact that though the day-to-day operations of REP are overseen by its local medical director, Dr. Kavitt, Dr. Kavitt reports directly to ECI's regional director, Dr. Zguris.  Id. at 6.  Dr. Zguris allegedly reports daily to his direct supervisor, Mr. Johnson.  Id.  Thus, Plaintiff contends that Mr. Johnson is the de facto manager of Riverside's emergency department.

In light of the above, the Court is persuaded as to the existence of a genuine issue of material fact as to the role of Mr. Johnson and the relationship between REP and ECI.  Indeed, an examination of the bare text of the contracts between the parties, discussed in greater detail below, reveals that Mr. Johnson signs contracts central to the arrangement between the Hospital and REP, as both the President and Managing Partner of REP, while he swore in his affidavit that he was the President and CEO of ECI.  See Doc. 67, Ex. 4; Doc. 69, Ex. A; Doc. 29, Ex. 1.

Because Mr. Johnson has been acting as the head of both these seemingly intertwined organizations, the Court finds that there is a material issue of fact as to whether ECI is so closely related to REP they could be considered the same entity in an action for vicarious liability for the actions of the emergency room physicians.  The fact that Mr. Johnson does not practice medicine in the Commonwealth of Virginia does not insulate him from liability.  The proper test is

whether Mr. Johnson manages the practice of medicine; in this context, whether he possessed or exercised the requisite control over the management of Riverside's emergency department and the physicians working there to be liable for their alleged negligence.  Accordingly, the Court **FINDS** that a genuine issue of material fact remains, and **DENIES** ECI's Motion for Summary Judgment.

### 2. The REP, ECI, and Riverside Contracts

Plaintiff further relies on a January 27, 1998 Agreement for Emergency Department Management Services ("1998 Agreement").[6]  Doc. 67 at 2; Doc. 67, Ex. 4 at 2.  She alleges that, by virtue of the 1998 Agreement, ECI was obligated to provide emergency services to Riverside; that ECI, not REP, was ultimately responsible for staffing and managing Riverside's emergency department.  Id.

The pertinent language of the 1998 Agreement is as follows:

> ECI shall assume the duties described in this Agreement . . . at Riverside Regional Medical Center (RRMC) on August 1, 1998.  If the physician group currently providing emergency physician services at RRMC terminates its agreement with RRMC prior to August 1, 1998, ECI agrees to assume the provision of services at RRMC upon current group's termination.

Doc. 67, Ex. 4 at 2.  The Agreement is signed by Mr. Johnson on behalf of REP, and Gerald Brick, on behalf of Riverside Health System.  Id. at 7.  There is no signature on behalf of ECI. Id.

The present Motion for Summary Judgment hinges on the relationship between REP and

---

[6]Throughout the briefs, Plaintiff refers to this as the "1999 Agreement"; however, nowhere in the Agreement is it dated 1998.  Doc. 67; Doc. 67, Ex. 4.  Rather, it was entered into on January 27, 1998.  Doc. 67, Ex. 4 at 7.

ECI.[7]  ECI claims that it "does not currently have, nor has it ever had, any contractual relationship with any of the parties defendant to the instant action to provide any medical care to patients of those parties defendant . . .," and "[n]one of ECI's employees, agents, or independent contractors rendered medical care or treatment to" Plaintiff.  See Doc. 29 at 2.  Plaintiff, however, citing the deposition of Mr. Johnson, contends that ECI is essentially the same entity as REP.  See Doc. 51 at 8.

ECI contends that any reference to ECI in the 1998 Agreement was typographical error, which was later remedied in a First Amendment to Agreement for Emergency Department Management Services ("First Amendment"), executed on April 19, 1999.  Doc. 69 at 5-6.  In support of this argument, ECI cites the fact that ECI is not a signatory to the 1998 Agreement, the term "ECI" is not defined in the contract, ECI is not otherwise identified in the contract, and all other references to rights are obligations concern REP, and not ECI.  Id.

ECI next relies on the First Amendment, which states: "Paragraph 3.  Term of the Agreement is hereby replaced with the following (to correct an error)."  Doc. 69, Ex. A (emphasis added).  The paragraph then substitutes "Partnership" (REP) for the previous references to "ECI" in paragraph three (3) of the original Agreement.  Id.

ECI also relies on an agreement between ECI and REP ("ECI-REP Agreement"), dated January 1, 1998, which defines the responsibilities assumed by ECI and REP.  Doc. 57, Ex. 5.  The ECI-REP Agreement provides that REP "engaged ECI to provide certain non-medical administrative services, and ECI hereby accepts such engagement, in accordance with the terms

_____

[7]In making its decision, it is important to note that the Court's inquiry into this matter is strictly limited to the contracts on Record, for the parties have failed to make any arguments outside the contract—e.g., Plaintiff has not alleged that this Court should pierce the corporate veil, or that REP is the alter ego of ECI.

and conditions of this Agreement." Id. at 1 (emphasis added). Relevant to the present matter,

paragraph two (2) of the ECI-REP Agreement states that

> the responsibility for providing health care shall at all times remain
> with the self-employed health care providers contracting with [REP].
> All services relating to providing health care to patients shall be in
> accordance with the independent medical judgment of the self-
> employed health care providers and shall not be subject to the
> supervision, direction or control of [REP] or ECI.

Id. ¶ 2. ECI's obligations under this Agreement were restricted to: (1) recruiting, though REP

retained authority and responsibility for contracting with individual physicians; (2) "assisting in

scheduling health care provider coverage"; (3) "assisting in procuring and maintaining

professional liability insurance"; (4) providing financial services, including preparation of tax

and financial reports, payroll and expense checks, billing and collection services, and

recommending and monitoring outside accounting services; (5) providing "consultation

regarding the development and maintenance of a Quality Assistance Program for client facilities

of [REP]"; (6) providing consultation on marketing of REP services and solicitation of clients for

REP; (7) providing consultation regarding the development and maintenance of a Medical

Director Program, Client Relations Program, and Health Care Provider Relations Program for

client facilities of REP; and, (8) assisting in the procurement of "legal services at the expense of

[REP]." Id. ¶ 3. The "status of ECI" is further defined as "an independent contractor for the

furnishing of administrative services." Id. ¶ 18.

Based on the evidence before the Court, the Court is unable to find whether there was a

contract between ECI and the Hospital that would create any obligation on ECI's part to manage

the emergency room.[8]  Reference made to ECI in the 1998 Agreement was allegedly due to

typographical error, inconsistent with the form and purpose of the 1998 Agreement and

contradicted by other contracts executed at approximately the same time and with regard to the

same matter.  However, the Court reserves its decision on the question of whether ECI may be

vicariously or contractually liable under other theories.

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS** Riverside's Motion on the Pleadings as

it applies to Plaintiff's claims for vicarious liability grounded in the C.F.R., the theory of non-

delegable duty, or independent contractor liability.  The Court **DENIES** Riverside's Motion as it

regards Plaintiff's claims against the Hospital for the negligent acts of Hospital employees.

ECI's Motion for Summary Judgment is **DENIED**.  There are material facts in dispute as

to whether ECI is ultimately liable, vicariously or contractually, for management of Riverside's

emergency department.

Finally, because Defendant's Motion to Strike was not raised at oral argument, the Court

considers it **WAIVED**.

The Clerk is **REQUESTED** to send a copy of this order to all counsel of record.

It is so **ORDERED**.  _____

---

[8]While there appear to be some facts establishing a close relationship between REP and
ECI, Plaintiff has argued her case under a theory of contractual liability, and not under a theory
that REP is ECI's alter ego such that this Court should pierce the corporate veil.  Accordingly,
the Court wishes to make clear that it is not deciding whether ECI and REP are or are not the
same corporation, because this argument was never alleged in Plaintiff's pleadings, nor are there
sufficient facts alleged to support such a finding.

_____ /s/ _____
*HENRY COKE MORGAN, JR.*
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
November 13, 2006